STATE TAX COMMISSION OF IOWA, Appellee, v. GENERAL TRADING COMPANY, doing business as MINNEAPOLIS IRON STORE, Appellant.

No. 46273.

JULY 27, 1943.

O'Brien, Horn, Stringer & Seymour, of St. Paul, Minnesota, and Gamble, Read, Howland & Rosenfield, of Des Moines, for appellant.

John M. Rankin, Attorney General, and Jens Grothe, Assistant Attorney General, for appellee.

MILLER, J.— ▮ Plaintiff's petition asserts that defendant is a Minnesota corporation, selling merchandise under the trade name of Minneapolis Iron Store, at Minneapolis, Minnesota; from April 16, 1937, through September 30, 1941, defendant sold merchandise to Iowa purchasers, who used and consumed same; defendant sent solicitors into Iowa, who took orders from Iowa purchasers, subject to acceptance at defendant's store in Minnesota; the property was subsequently delivered upon said orders in interstate commerce to the purchasers in Iowa; defendant thereby became a "retailer maintaining a place of business in this state" as defined by the Iowa Use Tax Law (chapter 329.4, Code, 1939), and was required to collect and pay to the state a use tax of two per cent on the merchandise so sold; defendant failed to collect and pay such tax; plaintiff determined the tax to be $360 and made an assessment accordingly; defendant was notified of such assessment and took no appeal therefrom; time for appeal has expired. The prayer demanded judgment for the use tax of $360, with statutory penalty and interest.

Defendant voluntarily appeared and filed answer which admitted certain allegations and denied others. Defendant admitted its corporate capacity, its place of business, the assessment of the tax, the failure to appeal therefrom, and that two per cent of the purchase price of merchandise sold by defendant to residents of Iowa from April 16, 1937, through September 30, 1941, amounted to $360. The answer further asserted that defendant is not qualified to do business in Iowa as a foreign corporation, does purely interstate business, has not main-

tained any office, distribution house, sales house, warehouse, or other place of business, or any agent located in Iowa, through which it has sold tangible personal property to persons in Iowa; from time to time during the period aforesaid, defendant sent traveling salesmen from Minnesota into Iowa, none of whom lived in Iowa or had headquarters in Iowa; such traveling salesmen solicited orders for merchandise in Iowa, which orders were subject to acceptance or rejection at defendant's office in Minnesota; the salesmen were not authorized to make and did not make any contracts in Iowa; in filling such orders as were accepted at its office in Minnesota, merchandise was shipped from Minnesota to Iowa by delivery to common carriers, truck or rail, or by delivery to United States postal department; the purchasers paid all costs of transportation by carrier or parcel post.

Based on the statement of facts aforesaid, the answer asserted that defendant's business was purely interstate, not dependent on any law or privilege extended by the State of Iowa and not subject to regulation by the State of Iowa; defendant's right to do business was granted by the Constitution of the United States and the laws of Minnesota; plaintiff and the State of Iowa have no jurisdiction to charge defendant for the privilege of carrying on its interstate business; if the Iowa Use Tax Act be construed to give plaintiff power to make the assessment herein, the act is void because it violates the due-process clause of the Fourteenth Amendment to the United States Constitution, violates section 8, Article I, of said Constitution and violates section 9, Article I, Constitution of Iowa; defendant is not a retailer maintaining a place of business in Iowa and there is no liability to plaintiff under the terms of the act; enforcement of the assessment made by plaintiff would result in regulation of defendant's business without the boundaries of Iowa, contrary to the due-process clauses aforesaid, would result in regulation of and imposition of a direct tax upon sales in interstate commerce, and the exercise of sovereign power by the State of Iowa beyond its boundaries, all in violation of the aforesaid constitutional provisions. The prayer of the answer was that the action be dismissed at plaintiff's costs.

Simultaneously with the filing of the answer, the Tax Commission filed a demurrer thereto, which asserted that (1) the answer shows on its face that defendant is a "retailer" and a "retailer maintaining a place of business in this state" as defined by paragraphs 5 and 6, section 6943.102, Code, 1939; (2) the answer shows on its face that defendant, as a "retailer" and a "retailer maintaining a place of business in this state" made sales to Iowa purchasers and is liable for said use-tax assessment under the provisions of the Iowa Use Tax Law.

The demurrer was duly argued and submitted; the court ordered that it be sustained; defendant refused to plead further, elected to stand on the ruling, and judgment was entered for the assessment of the use tax in the sum of $360 and costs. Defendant has appealed to this court.

In sustaining the demurrer, the court determined that, under the allegations of the answer, defendant is a "retailer maintaining a place of business in this state" within the meaning of the Use Tax Law. The defendant challenges such finding on four grounds, which may be classified into two: (1) that the court was wrong in interpreting the act so that it applies to defendant and (2) making the act applicable to defendant renders it unconstitutional. We find no merit in either contention.

I. The statutory provisions, interpreted by the trial court, are paragraphs 5 and 6 of section 6943.102, Code, 1939. We think that said paragraph 5 defines a "retailer" to include anyone engaged in the business of selling at retail tangible personal property for use in Iowa. Defendant was selling tangible personal property for use in Iowa and the sales were retail sales. Defendant was a "retailer" within the meaning of the act and does not contend otherwise. The contention is that defendant is not a "retailer maintaining a place of business in this state," as defined by paragraph 6 of said section 6943.102.[1] The

1. Paragraph 6, section 6943.102, Code, 1939, provides: " 'Retailer maintaining a place of business in this state' or any like term, shall mean and include any retailer having or maintaining within this state, directly or by a subsidiary, an office, distribution house, sales house, warehouse or other place of business, or any agent operating within this state under the authority of the retailer or its subsidiary, irrespective of whether such place of business or agent is located here permanently or temporarily, or whether such retailer or subsidiary is admitted to do business within this state pursuant to chapter 386."

answer asserts facts from which it appears that, if the phrase were to be given its ordinary meaning, defendant is not such a retailer. But we are dealing with a statutory definition. The Tax Commission points out that the statute provides that a "retailer maintaining a place of business in this state" shall include "any retailer having * * * within this state * * * any agent operating within this state under the authority of the retailer * * * irrespective of whether such * * * agent is located here permanently or temporarily, or whether such retailer * * * is admitted to do business within this state." The language is sufficient to include defendant within the terms of the statutory definition. We cannot shut our eyes to the words of the statute. The use of the words is the prerogative of the legislature. Our only function is to interpret the words which it has used. The trial court was right in holding that defendant's operations bring it within the letter and the language of the statute.

██ II. This brings us to the question whether the statute, as applied to defendant herein, violates the State or Federal Constitutions. The Tax Commission places great reliance upon the cases of Nelson v. Sears, Roebuck & Co., 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475, and Nelson v. Montgomery Ward & Co., 312 U. S. 373, 61 S. Ct. 593, 85 L. Ed. 897, which cases reversed the decisions of this court in Sears Roebuck & Co. v. Roddewig, 228 Iowa 1273, 292 N. W. 130, and Montgomery Ward & Co. v. Roddewig, 228 Iowa 1301, 292 N. W. 142. The writer of this opinion was the author of the majority opinions of this court in those cases. Were it not for the lessons learned in that experience, the arguments of counsel for defendant herein might be more persuasive and convincing.

In the Sears Roebuck and Montgomery Ward cases, supra, the question was whether the use-tax law applied to mail-order sales of tangible personal property for use in Iowa when the sales were completed outside of Iowa. This court, dividing five to four, held that it did not. The United States Supreme Court, dividing five to two, held that it did. In those cases, the retailers were doing business in Iowa. The Tax Commission threatened to cancel their licenses to do business here if the use taxes on

such mail-order business were not collected and paid. There was a means of enforcement available there that is not present here. On that feature of the case, the majority opinion in the Sears Roebuck case states at page 364 of 312 U. S., page 588 of 61 S. Ct., 85 L. Ed. 888, 132 A. L. R. 475, as follows:

"But respondent insists that * * * there is no local activity by respondent which generates or which relates to the mail orders here involved. Yet these orders are still a part of respondent's Iowa business. The fact that respondent could not be reached for the tax if it were not qualified to do business in Iowa would merely be a result of the 'impotence of state power.' Wisconsin v. J. C. Penney Co., supra [311 U. S. 435, 61 S. Ct. 246, 85 L. Ed. 267, 130 A. L. R. 1229]. Since Iowa has extended to it that privilege, Iowa can exact this burden as a price of enjoying the full benefits flowing from its Iowa business. Cf. Wisconsin v. J. C. Penney Co., supra. Respondent cannot avoid that burden though its business is departmentalized. Whatever may be the inspiration for these mail orders, however they may be filled, Iowa may rightly assume that they are not unrelated to respondent's course of business in Iowa. They are nonetheless a part of that business though none of respondent's agents in Iowa actually solicited or placed them. Hence to include them in the global amount of benefits which respondent is receiving from Iowa business is to conform to business facts."

Counsel for defendant urge that the reference to the "impotence of state power" means constitutional impotence and is, therefore, authority for a reversal herein. We cannot agree with such contention. Justice Douglas was referring to language of Justice Frankfurter in the J. C. Penney Company case there cited. In that case, Justice Frankfurter states, at pages 444 and 445 of 311 U. S., page 250 of 61 S. Ct., 85 L. Ed. 267, 130 A. L. R. 1229, as follows:

"Constitutional provisions are often so glossed over with commentary that imperceptibly we tend to construe the commentary rather than the text. We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the Constitution and not

verbal weapons imported into it. 'Taxable event,' 'jurisdiction to tax,' 'business situs,' 'extraterritoriality,' are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. The substantial privilege of carrying on business in Wisconsin, which has here been given, clearly supports the tax, and the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction.''

We are unable to interpret the language of Justice Douglas and Justice Frankfurter, above quoted, as committing the United States Supreme Court to any principle which would sustain defendant's contentions herein. This language, considered with the decisions of the court in the Montgomery Ward case, supra, the case of Felt & Tarrant Mfg. Co. v. Gallagher, 306 U. S. 62, 59 S. Ct. 376, 83 L. Ed. 488, and the decisions on which that case relies, would seem to be decisive against defendant herein.

In the Felt & Tarrant case, the operations of the retailer were very similar to those of defendant herein, except that the general agents, who solicited orders to be accepted or rejected outside of California, were residents of California and had permanent offices there. The company sought to enjoin collection of the California use tax. The action was dismissed. On appeal the judgment was affirmed. The court, per Justice McReynolds, states at page 66 of 306 U. S., page 378 of 59 S. Ct., 83 L. Ed. 488, as follows:

"The argument is this—

"The appellant, an Illinois corporation, carried on no intrastate operations in California and is not subject to its jurisdiction. Such business as it transacts in California is interstate in character. California, therefore, lacks the power to require it (1) to act as the state's collecting agent with respect to use tax which may become due from California storers, users or consumers, or (2) to insure payment of such tax if it fails to make collections from the tax debtors, or (3) otherwise to act as a 'retailer' as defined by the Act and the appellees. The treatment of the appellant as a retailer subject to the provisions of the California Use Tax Act is a direct burden upon interstate commerce prohibited by the Federal Constitution. Numerous provisions of the statute, if applied, would deprive appellant of its property without due process of law.

"The trial court thought that both contentions were foreclosed by what was said and ruled in Bowman v. Continental Oil Co., 256 U. S. 642, 650; Monamotor Oil Co. v. Johnson, 292 U. S. 86, 93, 95, and Henneford v. Silas Mason Co., 300 U. S. 577, 582, 583. And we agree with that conclusion."

The opinion then reviews the cases above cited and quotes from some of them. From the Silas Mason Company case, the court quotes from 300 U. S. 577, 582, 583, 57 S. Ct. 524, 526, 81 L. Ed. 814, as follows:

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end. * * * A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate."

From the Monamotor Oil Company case, 292 U. S. 86, 95, 54 S. Ct. 575, 578, 78 L. Ed. 1141, the court quotes the interpretation of the Iowa statute here in question, as follows:

"The statute obviously was not intended to reach transactions in interstate commerce, but to tax the use of motor fuel after it had come to rest in Iowa, and the requirement that the appellant as the shipper into Iowa shall, as agent of the

state, report and pay the tax on the gasoline thus coming into the state for use by others on whom the tax falls imposes no unconstitutional burden either upon interstate commerce or upon the appellant.''

In the Montgomery Ward case, the Felt & Tarrant case is expressly followed, the court stating, at page 376 of 312 U. S., page 595 of 61 S. Ct., 85 L. Ed. 897, as follows:

''It was stipulated that 'advertisements have been caused to be printed by the retail stores of the petitioner' (Montgomery Ward & Co.) in the State of Iowa, advertising not only retail merchandise, but the ability to complete service through the use of the catalog.' This stipulation clearly means that respondent has solicited mail order sales in Iowa. The fact that that solicitation was done through local advertisements rather than directly by local agents as in Felt & Tarrant Mfg. Co. v. Gallagher, 306 U. S. 62, is immaterial. Nor is it material that the orders were filled by direct shipments from points outside the state to purchasers within the state. For that method of delivery also obtained in case of some of the orders involved in Felt & Tarrant Mfg. Co. v. Gallagher, supra.''

The trial court interpreted the foregoing pronouncements as conclusive against defendant's contentions. We agree with the trial court. These decisions are directly opposed to the contention that the imposition of personal liability for the collection of taxes upon transactions beyond the borders of the state violates the due-process clause of the Fourteenth Amendment to the United States Constitution and the contention based on the fact that the sales were made in interstate commerce. The tax is not on the transaction or sale but is on the use of the article after it is acquired for use in Iowa through a sale in interstate commerce. If the collection of such a tax may be required in the event of a mail-order sale consummated outside of Iowa, as in the Sears Roebuck case, there is no constitutional limitation on the applicability of the tax where the order is solicited in Iowa but the sale is completed outside of Iowa. Such was the express holding in the Montgomery Ward and the Felt & Tarrant cases. Defendant contends that the

tax is an exaction for the privilege of engaging in interstate business. Such is not the holding in the cases above quoted. The Montgomery Ward case, the Sears Roebuck case, the Felt & Tarrant case, and the Monamotor Oil Company case all involved interstate commerce. In three of them, the Iowa statute now before us was involved. The statute was sustained in each instance.

In several of the cases above quoted from, the Supreme Court of the United States emphasized that the use tax is complementary to the retail-sales tax. Retailers selling tangible personal property for use in Iowa are liable for a sales tax of two per cent of the purchase price if the sale takes place in Iowa. Division IV, chapter 329.3, Code, 1939. If the retail-sales tax is collected and paid, no use tax is due. Paragraph 1, section 6943.104, Code, 1939. But if the sale is made under such circumstances that the retail-sales tax is not due, then there is a price differential in the amount of the sales tax which the use tax seeks to offset. By compelling defendant to collect and pay the use tax, the Tax Commission seeks to compel defendant to operate on an equality with the retailers in Iowa who, as a part of their business operations, collect and pay the retail-sales tax on all sales made by them. The justice of such equality undoubtedly accounts in large measure for the liberality of the court in undertaking to sustain use-tax statutes. This liberality has necessitated considerable reorientation in this field of constitutional law. Much of the argument of counsel would be quite persuasive and convincing had the United States Supreme Court adopted the dissenting opinion in the Sears Roebuck case, written by Justice Roberts, with whom Chief Justice Hughes concurred. But the court determined otherwise. A precedent has been established which we are bound to follow. The trial court was right in so doing. The judgment must be, and it is,—Affirmed.

OLIVER, HALE, GARFIELD, SMITH, BLISS, WENNERSTRUM, and MANTZ, JJ., concur.

MULRONEY, C. J., takes no part.