REICHMAN-CROSBY CO. *v.* STONE.

In Banc. Oct. 11, 1948.

(37 So. (2d) 22)

**W. W. Venable** and **Creekmore & Creekmore**, for appellant.

134

136

**J. H. Sumrall,** for appellee.

**McGehee, J.**

This is a suit to recover, in the manner provided by law, the sum of seventy-five dollars in Use Taxes paid, under protest, to the appellee, A. H. Stone, Chairman of the Tax Commission of Mississippi, by the appellant, Reichman-Crosby Company, non-resident corporation of Tennessee. A demurrer filed by the Tax Commission was sustained by the trial court to the declaration of the appellant, and upon failure of the plaintiff to amend, the suit was dismissed and final judgment was entered denying the recovery sought.

On this appeal the constitutional power and authority of the state to levy tax against the *user* of the tangible personal property purchased by residents of this state upon orders taken by the non-resident seller's travelling salesmen, who resided in Memphis where the orders were sent for acceptance or rejection, is not questioned.

The appellant challenges only the right of this state to require such a non-resident seller of tangible personal property to collect from its purchasers and pay the tax to the appellee "at the time of making sales," which are consumated at Memphis, Tennessee by delivery of the property to a common carrier for transportation to the purchasers in this state, since, according to the provisions of our Use Tax Law, it is declared that the tax "shall not apply with respect to the . . . use . . . of any article of tangible personal property sold . . . outside of this state until the transportation thereof has finally ended and such article has become commingled with the general mass of property within this state." Code 1942, Sec. 10148.

The power of the state to require the non-resident seller to act as its tax collector in the premises is further challenged on the ground that such seller in the case at bar is not doing business in this state under the principles announced by any prior decision of this

Court where the seller has no office, place of business or resident agent in this state, and has not qualified to do business here under our laws, and has not appointed a resident agent for the service of process here, and is engaged in no local activity in Mississippi within the meaning of our previous decisions as to what constitutes doing business in this state; that is to say, the appellant questions the constitutional power and authority of the state to make a tax collector out of a non-resident seller over which it has no territorial jurisdiction, since the seller is not present here within the contemplation of our own legal jurisprudence and within the meaning of all the decisions of the Supreme Court of the United States, except that which was rendered in the case of General Trading Company, doing business as Minneapolis Iron Store v. State Tax Commission of the State of Iowa, 322 U. S. 335, 64 S. Ct. 1028, 88 L. Ed. 1309, which is deemed not to be controlling in the instant case for the reasons to be hereinafter stated.

The property for the use of which the tax was demanded and paid by the appellant is alleged in the declaration to have been sold on orders taken by the non-resident salesman, who were soliciting agents of the appellant, and which had been delivered to a common carrier at Memphis for transportation to purchasers residing in Mississippi, resulting in the completion of such sales in Tennessee.

The tax is levied against the user of the property in Mississippi, and our Use Tax Law, Chapter 120, Laws of 1942, Secs. 10146 to 10167, both inclusive, Code of 1942, provides that the same "shall not apply with respect to the . . . use . . . of any article of tangible personal property sold . . . outside of this state until the transportation thereof is finally ended and such article has become commingled with the general mass of property within the state . . ."

The act further provides that "Every person maintaining a place of business in this state and making

sales of tangible personal property for use in this state,
. . . shall at the time of making the sales . . .
whether within or without the state, collect the tax im-
posed by this act from the purchaser . . . [and]
receipt therefor in the manner and in the form prescribed
by the commissioner if the commissioner shall, by regula-
tion, require such receipt;" that "the term 'retailer main-
taining a place of business in this state' or any similar
term, shall mean and include any retailer, distributor,
wholesaler or manufacturer . . . having or main-
taining within this state . . . an office, distribution
house, salesroom or house, warehouse or other place of
business, *or any agent operating within this state* under
the authority of the retailer, distributor, wholesaler or
manufacturer . . ., irrespective of whether such place
of business or agent is located within this state perma-
nently or temporarily, or whether such retailer, distribu-
tor, wholesaler or manufacturer . . ., is admitted
to do business within this state under its general laws."
(Italics ours.)

The act assesses and levies by a general provision a
tax upon "any person who uses, . . . any prop-
erty upon which a tax, is herein imposed . . .
upon which the tax has not been paid to the com-
missioner, as herein provided," and declares that such
person shall be liable therefor and shall pay the tax upon
notice and demand by the commissioner as therein pro-
vided.

The act also provides that, "The tax herein imposed,
. . . in addition to being a tax against the property,
business, trade or occupation, it shall constitute a debt
due the state by the person owing the tax, *or the person
required or authorized to collect it.*" (Italics ours.)

It is further provided in the act that, "It shall be un-
lawful for any person subject to the provisions of this
act to fail or refuse . . . to pay the tax herein im-
posed . . .;" and that "any person violating any of
the provisions of this act shall be guilty of a misde-

meanor, and on conviction thereof shall be fined not more than five hundred dollars ($500.00) or if he be an individual, imprisoned not exceeding six months in the county jail, or punished by both such fine and imprisonment, at the discretion of the court;'' and it is further provided that anyone failing or refusing to comply with provisions of the act ''may be proceeded against by injunction to prevent the continuance of his business in this state.''

The use tax imposed is equal to two per cent of the purchase price of the property, and it does not apply where the property has already been included in the measure of our Two Per Cent Sales Tax Law or the sales tax imposed by some other state in an amount equal to or greater than such Use Tax.

It is declared that the primary purpose of the tax is ''to protect, insofar as may be proved practicable the merchants, dealers, manufacturers . . . who meet the requirements of the Mississippi sales tax laws, against the unfair competition of importations of goods . . . into Mississippi without the payment of the retail sales tax imposed for the sale of goods, wares or merchandise usually carried for sale in this state . . .''

As hereinbefore stated, it is not contended that the tax is unconstitutional as against the user of tangible personal property purchased outside of the state over whom the state has jurisdiction and who enjoys the protection of its laws in the use and enjoyment thereof, but that as to the seller it is unconstitutional (1) for the reason that it violates the commerce clause as a burden on interstate commerce, in that the non-resident seller is required to become a surety or be responsible for the collection of the tax before any liability therefor has become fixed against the purchaser, and is not in a position to protect himself in the manner available to a local retail merchant in the state, who is able to collect the tax when the sale is being consummated by placing the goods back on the shelf if the purchaser fails to pay a two per cent sales tax; that

is to say, that he must credit the purchaser and run the risk as to being reimbursed after the property comes to rest in this state and the liability of the user accrues, or he must forego making the sale; and (2) that he is denied the equal protection of the laws guaranteed by the Federal Constitution for the reasons stated under numeral No. one; and (3) that the requirement as to him violates the due process clause of the Federal Constitution, Amendment 14, in that although he is not present in the taxing state subject to its jurisdiction, he is required to take notice of the statutes of a foreign state at the time of making a sale in his own state and collect the proper amount imposed by the Use Tax Law, notwithstanding that such taxing state has not conferred upon him the right to engage in interstate commerce— a right guaranteed by the federal government, and which the state government is prevented from withholding, in the exercise of which right the law of the state affords no protection as a local activity.

It is unnecessary that we emphasize these contentions, because to merely state them is to show their correctness, unless their force is negatived by decisions of the Supreme Court of the United States, since under our own decisions a non-resident seller engaged exclusively in interstate commerce in the manner hereinbefore mentioned is neither subject to the state's taxing power nor to the state's jurisdiction to subject it to personal liability for failure to collect and pay a tax levied against the citizens of this state.

The right of a state to assess a Use Tax against a resident thereof for the use therein of property which has been transported to him in interstate commerce is clearly upheld by the Federal Supreme Court in the following cases:

Monamotor Oil Co. v. Johnson, 292 U. S. 86, 54 S. Ct. 575, 78 L. Ed. 1141; Henneford v. Silas Mason Co., 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814; Felt v. Tarrant Co. v. Gallagher, 306 U. S. 62, 59 S. Ct. 376, 83 L. Ed.

488; Nelson v. Sears, Roebuck & Co., 312 U. S. 359, 61 S. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475; Nelson v. Montgomery Ward Co., 312 U. S. 373, 61 S. Ct. 593, 85 L. Ed. 897; McLeod v. J. E. Dilworth Co., 320 U. S. 728, 64 S. Ct. 87, 88 L. Ed. 430; and General Trading Company v. Tax Commission, 322 U. S. 335, 64 S. Ct. 1028, 88 L. Ed. 1309. The above enumerated cases were cited in the majority opinion rendered in the General Trading Co. v. State Tax Commission, supra, to support the decision therein rendered.

In some of the cases above mentioned, the right of the state to require the Use Tax to be collected by the non-resident seller was not involved. In the case of Monamotor Oil Co. v. Johnson, supra, the oil distributor, who was required to collect the tax, had itself received the oil in the taxing state for distribution there, and the state, of course, had territorial jurisdiction to require it to collect and pay the tax. In Henneford v. Silas Mason Co., supra, the right to require the seller to collect and pay the tax was not involved. In Felt & Tarrant Co. v. Gallagher, supra, the right to require the seller to collect the Use Tax was involved, but the non-resident seller had two general agents in two separate areas of the taxing state for whom it rented offices under leases in its own name, paying the rent therefor, and to which agents it shipped its comptometers for delivery to the respective purchasers there, and into which state it sent demonstrators for the machines; and the seller was therefore held to have maintained places of business within the state and to be doing business there.

In the cases of Nelson v. Sears, Roebuck & Co., and Nelson v. Montgomery Ward & Co., supra, the non-resident sellers were maintaining retail stores in the taxing state, and the precise question involved, was whether the sellers were required to collect and pay the Use Tax on its mail order business from customers throughout the state who did not purchase through the local stores. The right to require the seller to collect and pay the Use

Tax was upheld (1) for the reason that the court considered that the mail order business was a part of the general business being done as a whole through its local stores and otherwise in the state; and (2) for the obvious reason that since the sellers were doing business in the state, they were subject to its territorial jurisdiction.

In McLeod v. J. E. Dilworth Co., supra, the Arkansas sales tax was held not to be collectible from a non-resident seller, on the ground that the sale made in Memphis on orders received from Arkansas was not taxable on account of the commerce clause. No Use Tax was involved, but the court distinguished a sales tax from a use tax by saying that the former is a tax on the freedom of purchase, while the Use Tax is a tax on the enjoyment of that which is purchased.

This review of these cases, which we think are clearly distinguishable from the case at bar, brings us to a consideration of the only case in the decisions of the Supreme Court of the United States which upheld the right of a state to require a Use Tax to be paid by a non-resident seller which was only shipping goods into the taxing state on orders taken by its travelling salesmen there and later filled by delivery of the articles to a common carrier at Minneapolis to be shipped to the purchasers in Iowa, and where the seller was not doing business in the taxing state within the meaning of the Mississippi decisions, but was doing business in Iowa according to a decision of the Supreme Court in that state. State Tax Commission of the State of Iowa v. General Trading Co., 233 Iowa 877, 10 N. W. (2d) 659, 153 A. L. R. 602; General Trading Co. v. State Tax Comm., 322 U. S. 335, 64 S. Ct. 1028, 88 L. Ed. 1309. Therein the state court had held that the General Trading Company was a "retailer" maintaining a place of business in Iowa under the same facts and circumstances as are present in the case at bar in regard to its method of conducting its interstate business. It had evidently so held on the sole ground that the legislature of Iowa had declared by stat-

ute that the term " 'retailer maintaining a place of business in this state,' or any like term, shall mean and include any retailer having or maintaining within this state, . . . , an office, distribution house, sales house, warehouse or other places of business, *or any agent operating within this state* under the authority of the retailer . . . , irrespective of whether such place of business or agent is located here permanently or temporarily, or whether such retailer . . . is admitted to do business within this state." (Italics ours.) Code 1939, Sec. 6943.102, subd. 6. The distinction here is that the Supreme Court of the State of Mississippi has never held that a non-resident is a "retailer maintaining a place of business in this state" from the mere fact that it may have a soliciting agent operating within the state for the purpose of taking orders to be sent to his non-resident principal for acceptance or rejection and to be filled by shipments in interstate commerce where such non-resident seller maintains no office or other place of business here, and where such seller is engaged in no local activity under the protection of our laws, and where it is not qualified to do business within the state by appointing an agent for the service of process; that is to say, where it is not in fact doing business in this state in such a manner as to be present here. All of our decisions are directly to the contrary.

The provisions of our Use Tax Statute and those of the state of Iowa are substantially the same in all material respects, except that the Iowa statute does not contain the provision that the tax "shall not apply with respect to the . . . use . . . of any article of tangible personal property sold . . . outside of this state until the transportation thereof has finally ended and such article has become commingled with the general mass of property within this state . . ."

In the case of General Trading Company v. State Tax Commission, etc., supra [322 U. S. 335, 64 S. Ct. 1029], the majority opinion by the United States Supreme Court

appears to have been influenced by the fact noted therein that "The application by that Court (Iowa) of its local laws and the facts on which it founded its judgment are of course controlling here. . . . Upon these facts and its holding that Trading Company was a 'retailer maintaining a place of business in this state' within the meaning of the Iowa Statute, the Iowa Supreme Court held that Iowa had not exceeded its powers in the imposition of this use tax on Iowa purchases, and that collection *could validly be made through the Trading Company.*" (Italics ours.) The Supreme Court of Mississippi would not have held, as did the Iowa Court, that the state could require the trading company to collect and pay the taxes, since to do so would be contrary to all of the previous decisions of this Court as to what constitutes maintaining a place of business, or doing business in this state. Our decisions would have required that we should hold the question as what constitutes doing business in the state, territorial jurisdiction, and due process of law to be a judicial one, and that we were not bound by a legislative declaration or definition as to what would constitute doing business, territorial jurisdiction or due process of law, unless such declaration or definition was sanctioned or authorized by constitutional limitations.

In the case of Philadelphia & Reading R. R. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710, the Court, speaking through Mr. Justice Brandeis, announced the rule to be as follows: "A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there."

The appellant in the case at bar was not doing business in this state and was not present here within the principles announced by this Court in the following cases: First National Bank v. Mississippi Cotton Seed Products Co., 171 Miss. 282, 157 So. 349; Item Co. v. Shipp et al.,

140 Miss. 699, 106 So. 437; Smith et al. v. J. P. Seeburg Corporation, 129 Miss. 563, 6 So. (2d) 591; Stone v. General Contract Purchase Corporation, 193 Miss. 301, 7 So. (2d) 806, 140 A. L. R. 1029; Stone v. General Electric Contracts Corporation, 193 Miss. 317, 7 So. (2d) 811; A. H. Stone v. Memphis Natural Gas Co., 201 Miss. 670, 29 So. (2d) 268, affirmed 335 U. S. 80, 68 S. Ct. 1475; and the very recent case of Craig v. Mills, Miss., 33 So. (2d) 801. In the last four of the above cited cases, this Court upheld the right to collect an excise tax on the sole ground that the non-residents involved were engaged in local activities in this state and were enjoying rights here under our laws which were conferred and protected by the state. However, a non-resident does not get from the state its right to engage exclusively in interstate commerce.

It is true, of course, that a state in the exercise of its sovereign power may artificially define anything or any activity *which is subject to its jurisdiction*. But this Court held in the case of Lee v. Memphis Publishing Co., 195 Miss. 264, 14 So. (2d) 351, 152 A. L. R. 1423, that the defendant was not doing business in this state in such a manner as to be present and amenable to process and suit here, even though the legislature had declared that any corporation which "shall do *any* business or perform *any* character of work or service in the state shall by the doing of such business or the performance of such work or service" (italics ours) be deemed to have appointed the secretary of state as its agent for the service of process in any action growing out the doing of such business or the performance of such work. The said publishing company was engaged in distributing about forty thousand copies of its daily Commercial Appeals in this state, and even though its activities were immeasurably greater than those involved in the instant case, we held that it was not doing business here, notwithstanding the artificial definition given by the legis-

lature and that to subject it to suit in the State of Mississippi would be denying due process of law.

If the courts of the state have no jurisdiction over the appellant, Reichman-Crosby Company, in the case at bar, then how can it be said that the legislature would have jurisdiction over it to require the performance of the duties sought to be imposed by our Use Tax statute? Tax statutes are enacted upon the theory that the taxing authorities may invoke the aid of the courts to enforce compliance therewith, if need be, but in the instant case if the appellant had declined to pay the tax on demand, we know of no power vested in the courts of this state to enforce collection thereof, together with the penalties sought to be imposed for such default.

The remedy provided by the Use Tax Law of enjoining the seller from continuing in business in this state is not available because it is not doing business here according to our decisions; nor can its agents be prevented from soliciting orders for the purchase and transportation of goods exclusively in interstate commerce, since the Commerce Clause of the Federal Constitution, article 1, Sec. 8, cl. 3, forbids the state taking such action. Moreover, the seller is not shown to have any property, or liens on property, located in this state that are protected by our laws for their enforcement, as in the cases of Stone v. General Contract Purchase Corporation, supra, and other like cases; and being engaged in no local activity here, the seller is not present within the jurisdiction of either the courts or the Legislature of this state.

The dissenting opinion of Mr. Justice Jackson, concurred in by Mr. Justice Roberts, in the case of General Trading Company v. State Tax Commission, supra, is at least a correct pronouncement of the law as applied to the case at bar where the Supreme Court of Mississippi has not construed its local laws in the manner in which the Iowa Supreme Court had construed its laws—a factor which the majority opinion in the General Trading

Company case seems to have recognized as controlling there.

██ We are, therefore, of the opinion that while our Use Tax Law is constitutionally valid as applied to the user in this state of tangible personal property purchased outside of the state, it is unconstitutional as to its requirement that the non-resident seller shall collect and pay the tax under the facts and circumstances of this case; and that, therefore, the trial court was in error in sustaining the demurrer which admitted the facts alleged in the declaration as to the appellant's sole method of doing business with its Mississippi customers, which was only in interstate commerce and involved no local activities, or its presence, such as to constitute doing business in this state, and that the case must therefore be reversed and remanded.

Reversed and remanded.

**Griffith, C. J.** (dissenting).

So far as I can see there is no substantial difference between this case and State Tax Comm. v. General Trading Co. (Iowa), and although I think that case was incorrectly decided, it does remove any federal impediment to the legislative definition which we have here before us; and there being no impediment to it in the State Constitution, I concur in what Judge Montgomery has said in his dissent.

**Montgomery, J.** (dissenting).

This Court, in the decisions listed in the majority opinion, has heretofore, decided what does and does not constitute doing business in this State. In none of these cases had the Legislature defined what constituted doing business within the meaning of the act in question, and no decision was upon any such legislative definition.

In the case before us, the Legislature has, under Section 2 of Chapter 120, Laws of 1942, defined the term ''retailer maintaining a place of business in this state'' as follows:

''The term 'retailer maintaining a place of business in this state' . . . shall mean and include any retailer . . . having or maintaining within this state, directly or by a subsidiary . . . any agent operating within this state under the authority of the retailer . . . irrespective of whether such . . . agent is located within this state permanently or temporarily, or whether such retailer . . . is admitted to do business within this state under its general laws.''

This legislative definition is contrary to the former holdings of this Court on what constitutes doing business within the State. What the Legislature says, as above set out, shall constitute doing business within the State, would not, under the former decisions of this Court, come within the meaning of that term.

Is the Legislature bound by the decisions of this Court as to what shall constitute doing business in the State, and is its power limited to the definitions prescribed by this Court? With all deference to my brethren, I think not.

The state Constitution is not a grant but a limitation on legislative power. The Legislature may enact any law not expressly or inferentially prohibited by the Constitution of the State or Nation. State v. Edwards, 93 Miss. 704, 46 So. 964; St. Louis & S. F. Ry. Co. v. Benton County, 132 Miss. 325, 96 So. 689. Hence, the State Legislature has all political power not withheld by the State Constitution, or in conflict with the Constitution of the United States. Hinton v. Board of Supervisors of Perry County, 84 Miss. 536, 36 So. 565. Constitutional restriction by implication of the State's sovereign power to enact unlimited legislation for the public good is not favored, and the inhibition must appear plain and certain before it will be implied by the courts. Miller v.

State, 130 Miss. 564, 94 So. 706; State v. Board of Supervisors of Grenada County, 141 Miss. 701, 105 So. 541. Where, as here, the State Constitution is silent on the subject of legislation, the Legislature is supreme so long as the act is not in conflict with the Constitution of the United States. State v. Speakes, 144 Miss. 125, 109 So. 129.

The majority opinion does not hold that there is any conflict between the act and any section of the State Constitution. It holds that the provision conflicts with the Federal Constitution. But in construing an identical act, the Supreme Court of the United States has held to the contrary in the case of State Tax Commission of the State of Iowa v. General Trading Co., 233 Iowa 877, 10 N. W. (2d) 659, 153 A. L. R. 602; General Trading Co. v. State Tax Comm., 322 U. S. 335, 64 S. Ct. 1028, 88 L. Ed. 1309, where it holds that such an act does not conflict with the Federal Constitution.

Where a question is Federal in its nature, the decisions of the Supreme Court of the United States are absolutely binding on the various state courts, and must be followed, regardless of the views of the latter courts, and even though such decisions are inconsistent with prior decisions of the state courts. 21 C. J. S , Courts, Sec. 206, p. 365; Chesapeake & O. Ry. Company v. Martin, 283 U. S. 209, 51 S. Ct. 453, 75 L. Ed. 983. So the decisions of the Federal Court are binding as to the construction of the Federal Constitution. State of South Carolina v. Bailey, 289 U. S. 412, 53 S. Ct. 667, 77 L. Ed. 1292; 21 C. J. S., Courts, Sec. 206, p. 366, and cases there cited under Note 32.

There is nothing in the State Constitution to limit the power of the Legislature to act in this matter in the manner in which it has acted, and the Supreme Court of the United States has held in General Trading Company, etc., v. State Tax Commission of the State of Iowa, supra, that there is nothing in the Federal Constitution to restrict the power of the Iowa Legislature to so act and,

it seems to me, therefore that the power of the Mississippi Legislature, as exercised, is supreme.

The effect of the majority opinion, in my humble judgment, amounts to a rejection of the decision of the Supreme Court of the United States in General Trading Company, etc., v. State Tax Commission of the State of Iowa, supra, and, as I comprehend the law, this Court does not have that power on a question of the construction of the Federal Constitution.